**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JOSE CHAVEZ,
GABRIEL CHAVEZ,
and JONI CHAVEZ,**

       **Plaintiffs,**

**v.**                                         **2:23-cv-01133-JHR-GJF**

**DOÑA ANA COUNTY BOARD OF
COMMISSIONERS,
ANTONIO ALEMAN, in his individual
and official capacity,
LUIS RUIZ, in his individual
and official capacity, and
TOMAS ESPARZA, in his individual capacity,**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT AND QUALIFIED IMMUNITY**

THIS MATTER comes before the Court on Defendants' Motion for Partial Summary Judgment and Qualified Immunity Against Counts II, III, VII, X, XII, and XIII [Doc. 38]. Plaintiffs filed a response [Doc. 43] and Defendants replied [Doc. 52]. Having reviewed the parties' briefing, the record, and applicable law, I find that Defendants' motion is well-taken and **GRANT** partial summary judgment in favor of Defendants.

## I.   PROCEDURAL BACKGROUND

Plaintiffs filed suit against Defendants on November 16, 2023, in New Mexico state court. [Doc. 1-1, at 10]. Plaintiffs' claims arise from Doña Ana County Sheriff deputies Aleman and Ruiz's arrest of Jose Chavez and show of force against Gabriel and Joni Chavez. *Id.* at 10–16. Defendants removed to federal court on December 20, 2023, and Plaintiffs filed a first amended complaint. [Docs. 1, 18]. Defendants moved for partial summary judgment and Plaintiffs filed a

second amended complaint before briefing was complete on the motion. [Docs. 38, 48]. Defendants seek summary judgment on the following claims:[1]

1. Plaintiffs' claims for excessive force against Aleman and Ruiz under the Fourth Amendment and 42 U.S.C. § 1983. [Doc. 48, at 15].

2. Jose Chavez's claim for battery and Plaintiffs' claims for assault against Aleman and Ruiz under the New Mexico Tort Claims Act ("NMTCA"). *Id.* at 7–8.

3. Jose Chavez's claim for failure to accommodate under the Americans with Disabilities Act ("ADA") against Aleman, Ruiz, and Doña Ana County, and failure to train and/or supervise under the ADA against Doña Ana County. *Id.* at 17–18.

## II.  FACTUAL BACKGROUND

The Court recites the following factual background from the parties' stipulations, affidavits, and exhibits, identifying each of the Plaintiffs Chavez by their first names for clarity. [Doc. 38, at 2–5]; [Doc. 43, at 6–10]; [Doc. 52, at 2–5]; [Doc. 38-1, Attach. 1, at 0:00–16:30]; [Doc. 38-4, Attach. 1, at 0:41–17:00]; [Docs. 43-1, 43-2, 43-3].[2] On duty, Aleman and Ruiz responded to a call from Jose's neighbor regarding a fight over farm equipment. The neighbor explained he and Jose were friends whose relationship had soured, and Jose now refused to return his equipment over a pay dispute. The neighbor also told the officers that Jose would accuse him of having stolen the equipment from a third party first.

---

[1] Defendants also initially sought summary judgment for an excessive force claim under the New Mexico Constitution, which Plaintiffs have since dropped with their second amended complaint. *See* [Doc. 48]. Therefore, the Court does not address the parties' arguments with respect to this claim.
[2] "Doc. 38-1, Attach. 1" refers to Ruiz's body camera footage from the incident, and "Doc. 38-4, Attach. 2" refers to Aleman's body camera footage.

The deputies proceeded to Plaintiffs' house, where Jose, carrying a wooden stick about four feet long, met them outside from behind his driveway's front gate. Jose confirmed that he had his neighbor's equipment and told the deputies that he and the neighbor had shared it for years. Jose also confirmed that he was refusing to return it and stated the neighbor had stolen the equipment from another company. He added that the neighbor had threatened to shoot him over their dispute but he did not take the neighbor seriously.

The conversation between Jose and the deputies grew more agitated. The deputies informed him that he had committed a criminal embezzlement, to which Jose replied, "bring on the criminal charges then." Aleman told Jose to step out from behind his gate. Jose refused and began walking back to his house. The deputies opened the gate, jogged up to Jose in the driveway, and attempted to handcuff him. As Aleman reached for him, Jose turned around and swung his stick towards Aleman without striking him and then held it across the front of his body. Aleman drew his taser and Ruiz his firearm, pointing both at Jose. In the body camera footage, Ruiz can be heard saying "hey" and Jose dared the deputies to "go ahead and shoot it." Aleman fired his taser without effect as Jose swung his stick in a circular motion around the taser wires. Both Aleman and Ruiz stated in affidavits that they feared they might be struck and suffer great bodily injury from Jose's stick. [Doc. 38-1, at 2]; [Doc. 38-4, at 2]. Plaintiffs do not dispute the deputies' descriptions of Jose's conduct and the sequence of events but assert he only acted in self-defense to protect himself from an illegal arrest and tasing. [Doc. 43, at 5]; [Doc. 43-1, at 2] (expert opinion).

Aleman again fired his taser at Jose without apparent effect as Jose started again toward his house with his stick still in his hand. Ruiz warned Jose, "you're gonna get shot bro, don't do it," to which Jose retorted, "do it motherf****r, do it!" Ruiz drew his taser and fired at Jose who

stayed standing and continued hurling insults. Ruiz shot his taser a second time which caused Jose to seize and buckle to the ground while shouting. The deputies handcuffed Jose where he lay.

As the deputies then sat up Jose, Gabriel came running out of the garage toward them. The deputies screamed "stay back!" and "get back!" repeatedly as Ruiz placed his hand on his holster and Aleman briefly drew his firearm and pointed it at Gabriel. Gabriel complied, lifting his arms and explaining that Jose was his dad who had a broken hip and recently suffered a heart attack. Gabriel told the deputies he came rushing out because he couldn't see what was happening but from the sounds of the confrontation he feared the neighbor had come and attacked his father. While Gabriel spoke, Joni ran out of the garage but froze behind Gabriel when both he and the deputies told her to stop. While Gabriel was identifying himself, Aleman holstered his firearm, pulled out his OC spray, and briefly pointed it towards Gabriel and Joni before putting it away. The group then waited together for paramedics called by the deputies to arrive.

## III. <u>BRIEFING SUMMARY</u>

In their motion, Defendants argue that Aleman and Ruiz are entitled to qualified immunity on Plaintiffs' excessive force claims because they used reasonable force. [Doc. 38, at 7]. As to Jose, Defendants argue that the deputies' tasing and pointing of a firearm at him was reasonably necessary in light of his resisting arrest, swinging his stick at them, and the deputies' reasonable belief that he could inflict great bodily injury. *Id.* at 9–13. Defendants argue that whether the deputies had lawful grounds to arrest Jose, which Plaintiffs dispute, is irrelevant to the reasonable force analysis. *Id.* at 7. As to Gabriel and Joni, Defendants argue they have no claim against Ruiz as he made no threats of force towards them when commanding them to stop. *Id.* at 14. In addition, Aleman's pointing of a firearm and OC spray was based on a reasonable belief that Gabriel and Joni posed an imminent threat of great bodily harm when they ran at the deputies. *Id.* at 14–19.

Defendants argue they are entitled to summary judgment on Plaintiffs' battery and assault claims since their use of reasonable force is a defense to liability under New Mexico law. *Id.* at 19–20. Finally, Defendants argue that Aleman, Ruiz, and Doña Ana County are entitled to summary judgment on Jose's ADA claims because Jose failed to plead necessary elements: what his disability was, what accommodation was reasonable and necessary, and that he requested an accommodation from the deputies. *Id.* at 22–24.

Plaintiffs respond that the legality of Jose's arrest is relevant to the excessive force inquiry. [Doc. 43, at 17, 19, 21]. Assuming that Aleman and Ruiz lacked probable cause or exigent circumstances to enter their property, Plaintiffs contend that the deputies acted recklessly and provoked Plaintiffs' actions in self-defense. *Id.* at 17, 19, 22. As to their battery and assault claims, Plaintiffs argue summary judgment is improper because they've alleged prima facie cases of battery and assault, and New Mexico employs different standards for evaluating an officer's use of force. *Id.* at 28–29. Finally, as to Jose's ADA claims, Plaintiffs argue that summary judgment is improper because there is a material dispute over whether Aleman and Ruiz needed to accommodate Jose's apparent limp and age by making a less "intrusive" arrest. *Id.* at 26–27.

Defendants reassert that the legality of an arrest does not impact whether the force used to make the arrest was reasonable. [Doc. 52, at 13–15]. Defendants argue the deputies' decision to enter Plaintiffs' property, at worst, was negligent and not reckless. *Id.* at 5–6, 11–13. Defendants also point out that Plaintiffs failed to offer any independent argument in support of Gabriel's and Joni's excessive force claims so their claims fail with Jose's. *Id.* at 16–17. For battery and assault, Defendants argue that while New Mexico may use different standards than federal law when officers assert reasonable force as a defense to tort liability, Plaintiffs have failed to show a genuine dispute of material fact under New Mexico law. *Id.* at 21–23. For the ADA claims, Defendants

argue that refraining from making an arrest is not a reasonable accommodation under the ADA and that there is no genuine dispute that Jose did not request an accommodation nor indicated an obvious need for one. *Id.* at 17–19.

### IV.  STATEMENT OF THE ISSUES

1. Are Aleman and Ruiz entitled to qualified immunity against Plaintiffs' Fourth Amendment excessive force claims?

2. Is there a genuine dispute of material fact whether Aleman and Ruiz committed battery against Jose Chavez and assault against Plaintiffs under the NMTCA?

3. Is there a genuine dispute of material fact over whether Aleman, Ruiz, and Doña Ana County failed to accommodate a disability experienced by Jose Chavez, and whether Doña Ana County's failed to train and/or supervise the deputies such that the failure caused disability discrimination to occur?

### V.  STANDARDS OF REVIEW

**A.    Summary Judgment.**

Under Fed. R. Civ. P. 56(a), a party may obtain summary judgment on a claim if they demonstrate there is no genuine dispute of material fact and they are entitled to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A factual dispute is genuine and material when, on the evidence in the record and applicable law, a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of disputed material fact, which they can do by pointing to a lack of evidence offered for the nonmovant's claim. *Adler*, 144 F.3d at 670–71. The burden then shifts to the nonmoving party to show a genuine dispute nevertheless exists. *Lindsey v. Hyler*, 918 F.3d 1109, 1113 (10th Cir. 2019).

To determine whether the record contains a genuine and material factual dispute, the court must make all reasonable inferences and interpretations of evidence in favor of the nonmoving party. *Id.* However, the court may not rely on unsupported allegations; instead, it reviews any depositions, answers to interrogatories, affidavits, and other evidence offered on file. *E.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The court may also treat any stipulation by the parties as a conclusive admission. *In re Durability, Inc.*, 212 F.3d 551, 555 (10th Cir. 2000). The court may not assess witnesses' credibility when examining the record, but a nonmoving party cannot establish a factual dispute by speculating that a jury could choose to disbelieve witness testimony offered by the moving party. *Helget v. City of Hays*, 844 F.3d 1216, 1223 n. 3 (10th Cir. 2017).

## B.     Qualified Immunity.

For a plaintiff to succeed on a claim against which an officer can raise qualified immunity, the officer must have violated the plaintiff's constitutional or statutory right and done so in a manner contrary to clearly established law. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). As with summary judgment, a court must give the plaintiff the benefit of all reasonable inferences of fact when applying qualified immunity, but unlike summary judgment, the plaintiff bears the burden of proving the qualified immunity defense fails once the defendant officer asserts it. *Id.*

To prove a defendant officer violated clearly established law, the plaintiff must cite either on-point controlling Tenth Circuit or Supreme Court precedent or demonstrate the consensus of other circuits weighs in his or her favor. *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2020). On-point precedent does not need identical facts to the plaintiff's claim but its similarity cannot rest on broadly stated legal principles. *Leiser v. Moore*, 903 F.3d 1137, 1140 (10th Cir. 2018).

Instead, the precedent's facts must apply with enough particularity to have given the defendant officer fair notice that the law prohibited his specific conduct. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). If caselaw has not "placed the statutory or constitutional question [of the case] beyond debate," then there is not clearly established law. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

## VI.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' §1983 EXCESSIVE FORCE CLAIMS.

### A.    Applicable Law for Fourth Amendment Excessive Force Claims.

Under the Fourth Amendment, officers may not use excessive force to perform a seizure of an individual. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (defining "seizure"). Broadly speaking, whether an officer used excessive force depends on balancing the "'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Graham*, 490 U.S. at 396 (quoting *Garner*, 471 U.S. at 8). To strike that balance, courts inquire whether an officer used objectively reasonable force under the totality of the circumstances without regard for the officer's subjective intent. *Reavis ex rel. Est. of Coale v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020).

The Supreme Court offered three non-exclusive factors to guide excessive force analysis: (1) the severity of the crime for which the officer attempts to arrest the individual, (2) whether the individual posed an immediate threat to the officer or others, and (3) whether the individual was actively resisting arrest at the time the officers employed the use of force. *Graham*, 490 U.S. at 396. The most important and fact-intensive consideration is the immediate threat the individual may have posed. *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) (citing *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).

For an officer to use or threaten to use deadly force without violating the Fourth Amendment, the officer must reasonably believe that the individual poses an immediate risk of death or great bodily harm to the officer or others. *See Garner*, 471 U.S. at 11. However, the officer should give the suspect a warning about their preparedness to use deadly force if feasible. *Id.* In *Larsen*, the Tenth Circuit highlighted four factors for weighing the reasonableness of deadly force, including (1) whether the officer instructed the suspect to drop any deadly weapon in their possession and the suspect's level of compliance, (2) whether the suspect made any hostile motions with the weapon towards the officers, (3) the distance separating the officers and the suspect, and (4) the manifest intentions of the suspect. *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). Still, additional considerations for the use of deadly force do not supplant the general, totality-of-circumstances inquiry. *Scott v. Harris*, 550 U.S. 372, 383 (2007).

As an additional frame of reference, courts must consider how an objectively reasonable officer would have understood the situation based on information available to the officer and without the benefit of hindsight. *Graham*, 490 U.S. at 396. In doing so, courts make room for the fact that officers often have to make split judgments under the pressure of rapidly evolving, tense, and uncertain circumstances. *Est. of George v. City of Rifle*, 85 F.4th 1300, 1316 (10th Cir. 2023). Therefore, if an officer based their use of force on a reasonable yet mistaken belief, that mistake does not make their use of force excessive. *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023) (citing *Thomas v. Durastanti*, 607 F.3d 655, 666 (10th Cir. 2010)). However, an officer may not create the need to use more force by provoking an individual through reckless or deliberate conduct. *Reavis*, 967 F.3d at 985. "Mere negligence or conduct attenuated by time or intervening events" will not suffice to make an officer culpable. *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1214 (10th Cir. 2019) (citing *Sevier v. City of Lawrence*, 60 F.3d 695, 699 n.8 (10th Cir. 1995)).

The Fourth Amendment protects an individual against excessive force regardless of whether an officer has legal cause to arrest him or her. *See Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). Conversely, an officer's unlawful arrest of a person does not make the force he used to do it excessive. *Id.*; *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017). Thus, while evidence may overlap when a plaintiff bases an excessive force claim and an unlawful seizure claim on the same sequence of events, the two are separate and independent inquiries. *Cortez*, 478 F.3d at 1127.

**B.    Aleman and Ruiz Used Objectively Reasonable Force Against Plaintiffs.**

1.    <u>Jose Chavez's excessive force claim.</u>

I begin by evaluating Aleman's and Ruiz's use of force—entering Plaintiffs' property, attempting to handcuff Jose, drawing and pointing tasers and a firearm at him, and discharging their tasers four times (although the evidence does not show perceptible contact more than twice)—under *Graham*'s three factors and totality-of-the-circumstances test. *Graham*, 490 U.S. at 396.

Under the first *Graham* factor, severity of the crime, the deputies suspected Jose had committed embezzlement by refusing to return borrowed farm equipment to his neighbor unless the neighbor paid him. While Plaintiffs argue the deputies lacked probable cause for any arrest, I must assume probable cause for purposes of excessive force claims. *See Maresca v. Bernalillo City*, 804 F.3d 1301, 1313 (10th Cir. 2015). Under New Mexico law, embezzlement is either a misdemeanor or felony depending on the value of the item that the person converts to their own possession. NMSA 1978 § 30-16-8. Misdemeanors justify less force, whereas felonies favor the use of more force to apprehend a suspect even if the crime is nonviolent. *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008): *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th

Cir. 2021).[3] Jose's booking form lists a charge for felony larceny of property worth more than $500 but not more than $2,500 under NMSA 1978 § 30-16-01. [Doc. 43-3]. Such an embezzlement would be a felony. NMSA 1978 § 30-16-8(D). Thus, I find that the deputies were conducting a felony arrest for purposes of the *Graham* analysis. *Vette*, 989 F.3d at 1170.

Next taking up the third *Graham* factor, when a suspect resists arrest, officers may proportionally increase their use of force to incapacitate the suspect. *Surat v. Klamser*, 52 F.4th 1261, 1275 (10th Cir. 2022); *Larsen*, 511 F.3d at 1260. The parties do not dispute that Jose refused to comply with the deputies' instructions, swung his stick first before the deputies drew their service weapons in response, and challenged them to shoot him in response to their warnings.[4] [Doc. 43, at 5–6]. While the deputies deployed their tasers four times, they did so because the first three failed to incapacitate Jose. *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) (use of taser may be justified to the extent necessary to incapacitate a resisting individual but continuing to do so afterward is not). The deputies ceased using their weapons and handcuffed Jose when it was safe to do so. Thus, Jose's resistance to arrest supports the deputies' decision to increase their use of force.

Plaintiffs argue the third factor should favor Jose because the deputies attempted an illegal arrest in a manner that made him fear the deputies would use excessive force. [Doc. 43, at 19]. Plaintiffs provide an expert report that concludes Jose did not know the deputies intended to arrest him at first, raised his stick at the deputies to defend against their tasers, and did not actively resist arrest. [Doc. 43-1, at 2–3]. However, the expert's report is speculative. It does not clearly explain

---

[3] Defendants argue that Jose's resisting arrest qualified as aggravated assault on a peace officer and should be the crime considered for the first *Graham* factor. [Doc. 38, at 9–10]. However, Defendants' argument would have the third *Graham* factor swallow the first where a suspect physically resists arrest, contrary to the typical application of *Graham*. *See, e.g., Perea*, 817 F.3d at 1203–04 (suspect's resisting arrest might have justified some use of a taser, but the crimes he was suspected of were minor offenses that only supported using minimal force).

[4] Plaintiffs argue that the deputies drew their weapons first but offer no supporting evidence and do not deny Defendants' recitation of the undisputed fact. [Doc. 38, at 3–4]; [Doc. 43, at 5, 17].

what material the expert reviewed nor mention the nature of the purported expert's expertise; nor is the subjective state of mind of an arrestee typically determined by expert opinion. *Id.* Furthermore, the body camera footage patently contradicts the expert's recitation of facts by showing Jose dared the deputies to "bring on the criminal charges" at the gate and swung his stick first when Aleman attempted to handcuff him. [Doc. 38-1, Attach. 1, at 14:03–14:19]; [Doc. 38-4, Attach. 1, at 14:45–15:00]. Therefore, the report is not sufficient to create a genuine dispute of fact. *See Martinez v. CO2 Servs., Inc.*, 12 F. App'x 689, 694–95 (10th Cir. 2001) (citing *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999)).

Turning now to the second and most important *Graham* factor, whether Jose posed an immediate threat of danger to the deputies or others, Plaintiffs characterize Jose's conduct as self-defense. [Doc. 43, at 18]; [Doc. 43-1]. However, assessment of an individual's threat for purposes of an excessive force claim depends on what an objective officer could reasonably believe, even if the belief is wrong. *Palacios*, 61 F.4th at 1256. Assuming Jose did not have malintent, his aggressive conduct would still have made an objectively reasonable officer believe Jose would strike him if he persisted in the arrest. *See Larsen*, 511 F.3d at 1260 (more force is justified if officer reasonably but mistakenly believes a suspect intends to fight back).

Since Ruiz pointed his firearm—a threat of deadly force—I further consider the four *Larsen* factors to decide whether Ruiz reasonably believed Jose posed an immediate threat of serious bodily injury or death. *Id*. First, Jose's stick qualifies as a deadly weapon as its length and heft could cause serious injury when swung like a bat. *See United States v. Tissnolthtos*, 115 F.3d 759, 763 (10th Cir. 1997) (quoting *United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir. 1994)) ("[I]n the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks."). Second, Jose swung the stick multiple times towards the deputies, which the

deputies could reasonably believe was a hostile act. *See Larsen*, 511 F.3d at 1260. Third, only a short distance separated the deputies from Jose so that Jose could have struck the officers with his stick if he walked a few steps forward. *See id.* Fourth and finally, Jose's conduct demonstrated an intent to resist arrest. *See id.* Thus, the second *Graham* factor supports the deputies generally and all *Larsen* factors support the reasonableness of Ruiz's decision to draw and point his firearm at Jose.

Plaintiffs counter that the deputies' entry of Plaintiffs' property recklessly provoked Jose's actions, thereby making the deputies liable for how the confrontation escalated. [Doc. 43, at 16–19]. Defendants reply that the deputies' decision to enter the property without a warrant was not reckless but at worst negligent based on the information they had at the time. [Doc. 52, at 12].

Courts have found law enforcement recklessly provoked violent confrontations when officers forced people into high-stress, dangerous circumstances or otherwise worsened them, often without giving the person a chance to realize they were dealing with law enforcement. *Ceballos*, 919 F.3d at 1216 (officer advanced quickly on suspect, screamed, and refused to give ground); *Rosales v. Bradshaw*, 72 F.4th 1145, 1155 (10th Cir. 2023) (off-duty officer followed plaintiff in unmarked vehicle, boxed plaintiff into his driveway, and screamed at plaintiff without identifying himself); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991) (officer intentionally entered dark hallway of a private residence in the middle of the night without "indication of his identity"); *see also Est. of Valverde ex rel. Padilla v. Dodge*, 967 F.3d 1049, 1067–68 (10th Cir. 2020) (opinions finding reckless conduct depended on a "police onslaught" of impaired and distressed individuals).

Here, nothing genuinely contradicts that Jose knew Aleman and Ruiz were deputies, challenged the deputies to "bring on the criminal charges," and swung his stick first towards the deputies when they obliged. [Doc. 38, at 3–4]; [Doc. 38-1, Attach. 1, at 8:13–14:19]; [Doc. 38-4,

Attach. 1, at 8:53–15:00]. Unlike the plaintiffs in *Rosales* and *Ceballos*, Jose had no confusion about the deputies' law enforcement status, understood they intended to arrest him, and acted first to escalate the confrontation. The deputies' actions towards Jose cannot fairly be characterized as a provocative "onslaught." *See Padilla*, 967 F.3d at 1067–68.

Plaintiffs assert that the legality of the deputies' decision to enter their property should factor into the recklessness of their conduct, citing the Tenth Circuit's decision in *Cortez*. [Doc. 43, at 21]. In that case, the circuit held that a plaintiff had a viable excessive force claim when officers entered her home without a warrant or exigent circumstances, grabbed and pulled her outside, and locked her in a police car while they arrested her husband on suspicion of a serious felony. *Cortez*, 478 F.3d at 1130. Therefore, Plaintiffs argue that an officer's "intrusion into the home, an area specifically protected under the language of the Fourth Amendment, is a significant factor . . . when evaluating whether the force used was excessive." [Doc. 43, at 21–22]. *Cortez* did note that "in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it." *Cortez*, 478 F.3d at 1127. At the same time, *Cortez* clarified that "an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, *and is independent of whether law enforcement had the power to arrest.*" *Id.* (quoting *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1332 (11th Cir. 2006)) (emphasis added). Because the officers in *Cortez* did not suspect the plaintiff of a crime and had no meaningful security concerns about her, the amount of force they used could be found excessive by a reasonable jury. *Id.* at 1130. *Cortez*'s distinction between the manner and legality of arrest is consistent with the Supreme Court's holding than an arrest's legality does not dictate whether the officer's conduct can be considered reckless. *Mendez*, 581 U.S. at 427.

In short, *Cortez* does not stand for the principle that the illegality of an arrest can bolster an excessive force claim. Rather, what counts is "the level of force . . . in relation to the threat that [the plaintiff] presented and the surrounding circumstances." *Cortez*, 478 F.3d at 1131. Jose's circumstances are more akin to the arrested husband in *Cortez*, whom the Tenth Circuit ruled did not have an excessive force claim despite the viability of his illegal arrest claim. *Cortez*, 478 F.3d at 1128–29. Any alleged illegality of the deputies' entrance onto Plaintiffs' property here would not be sufficient to make their conduct rise to recklessness.

Therefore, under the totality of the circumstances per the *Graham* and *Larsen* factors, there is no genuine dispute of material fact that the deputies used objectively reasonable force against Jose Chavez. Defendants are entitled to summary judgment on Jose Chavez's excessive force claim.

2.    Gabriel Chavez's and Joni Chavez's excessive force claims.

For these claims, Gabriel and Joni Chavez allege that the deputies recklessly provoked their reactions through the same conduct that provoked Jose. [Doc. 43, at 20, 22]. However, the deputies' conduct did not rise to recklessness either. *See* Part VI.B.1, *supra*. Plaintiffs do not dispute that Aleman pointed his firearm at Gabriel and OC spray at Joni in response to their running towards the deputies. *Id.* at 5–6. Plaintiffs also do not dispute, as the body camera footage shows, that Ruiz never pointed a weapon and instead raised his left arm to tell Gabriel and Joni to stop while keeping his right hand on his holstered firearm. *Id.*; [Doc. 38-1, Attach. 1, at 15:07–15:50]. When Gabriel and Joni rushed outside, they approached the deputies just as they had finished handcuffing Jose. *Id.* They did not stop and identify themselves for the deputies until after Aleman pointed his weapon at Gabriel and the deputies screamed at them to stop. [Doc. 38-4, Attach. 1, at 15:49–17:00]. Once they did, Aleman holstered his weapons. *Id.*

Generally, officers may point their firearms at an individual when they reasonably believe that individual poses a threat of great bodily harm to the officers or others. *Rosales*, 72 F.4th at 1155. In potentially volatile situations, that includes officers pointing their firearm at an individual while engaged in determining whether the individual poses a safety risk. *Reeves v. Churchich*, 484 F.3d 1244, 1260–61 (10th Cir. 2007). Here, the deputies saw one unidentified individual followed by another speed towards them from a short distance immediately after a violent confrontation with Jose. It was reasonable for Aleman to point his firearm then his OC spray at Gabriel and Joni until they stopped, identified themselves, and explained why they had come running toward the deputies. Aleman holstered his weapons once it became objectively clear that Gabriel and Joni did not intend any harm. *Cf. Maresca*, 804 F.3d at 1314 (officers used excessive force by pointing firearms at plaintiffs after they complied with their instructions to get on the ground). Under the totality of the circumstances the deputies used objectively reasonable force against Gabriel and Joni and Defendants are entitled to summary judgment on their excessive force claims.

## VII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BATTERY AND ASSAULT CLAIMS

### A.    Battery and Assault Under New Mexico Law.

In New Mexico, battery occurs when an individual acts with the intent to cause harmful or offensive contact, or the imminent apprehension of such, and does cause offensive contact to happen. *Hernandez v. Parker*, 2022-NMCA-023, ¶ 28, 508 P.3d 947, 957. Assault is similar but does not require that offensive contact actually occur. *Id.* Notwithstanding the fact that some arrests may satisfy the elements of assault and battery, New Mexico grants officers a right to use reasonable force in the course of their lawful duties. *State v. Ellis*, 2008-NMSC-032, ¶ 31, 186 P.3d 245, 252–53; *State v. Lymon*, 2021-NMSC-021, ¶ 30, 488 P.3d 610, 621. Thus, an officer

may raise the use of reasonable force as a defense to a claim of assault or battery. *Mead v. O'Connor*, 1959-NMSC-077, ¶ 4, 344 P.2d 478, 479–80.

Generally, the New Mexico Supreme Court has relied on federal jurisprudence to adopt an objective test for reasonable force. *Ellis*, 2008-NMSC-032, ¶¶ 25, 31, 186 P.3d at 251, 252; *Lymon*, 2021-NMSC-021, ¶ 32, 488 P.3d at 621. Recently, though, the New Mexico Court of Appeals held that objectively reasonable force did not preclude liability for intentional torts, without adapting the formulation of the reasonable force defense. *See Hernandez*, 2022-NMCA-023, ¶¶ 29, 31–32, 508 P.3d at 957, 958. The common-law test, which *Hernandez* discussed, recognizes that an officer's use of force must be both objectively and subjectively reasonable to avoid liability for assault or battery. *Id.* at ¶ 31, p. 958 (citing 6 Am. Jr. 2d, *Assault & Battery* § 104 (2021)).

An officer uses force within the lawful discharge of their duties when they seize an individual in good faith, even if later a court determines the officer seized the individual unlawfully. *State v. Doe*, 1978-NMSC-072, ¶¶ 9, 14, 583 P.2d 464, 466–67. Thus, only when an officer has engaged in personal frolic, acted in bad faith, or used unreasonable force has he exceeded the bounds of his lawful duties. *State v. Penman*, No. S-1-SC-39487, 2024 WL 3933715, at *5 (N.M. Aug. 26, 2024). In particular, an officer is not shielded when the officer has no grounds to believe a criminal offense had occurred nor a legitimate basis to stop an individual. *State v. Frazier*, 1975-NMCA-074, ¶ 11, 537 P.2d 711, 712–13.

**B.    The Deputies' Subjectively and Objectively Reasonable Use of Force Precludes Liability for Battery and Assault Under the NMTCA.**

Based on *Hernandez*, the Court employs the common-law test that an officer's subjectively and objectively reasonable use of force, within the course of their lawful duties, provides a complete defense to tort liability for battery and assault. *See Cruz v. City of Deming*, No. 2:22-cv-00957, 2023 WL 8602866, at *10 (D.N.M. Dec. 12, 2023). As discussed above, the deputies used

objectively reasonable force against Plaintiffs. *See* Part VI.B, *supra*. Subjectively, Aleman and Ruiz provided affidavits swearing to their belief that the force they used was reasonably necessary, and Plaintiffs provide no reason to doubt the affidavits' credibility. [Doc. 38-4, at 2–3]; [Doc. 38-1, at 2–3]; *Helget*, 844 F.3d at 1223 n.3.

Plaintiffs do not dispute the evidence but argue summary judgment is inappropriate because Defendants bear the burden of proof that the deputies used reasonable force, a question typically reserved for the jury. [Doc. 43, at 28–29]. Defendants do not enjoy the burden-shifting of qualified immunity for these claims, but the evidence on record demonstrates that these tort claims lack material factual support regarding the reasonability of the force used. *Ellis*, 2008-NMSC-032, ¶ 41, 186 P.3d at 255.[5]

Plaintiffs assert that alleged illegality of the arrest means the deputies acted outside the scope of their duties, depriving them of a reasonable force defense. [Doc. 43, at 17]. However, to act within their duties the deputies only needed to have made the arrest in good faith. *Doe*, 1978-NMSC-072, ¶¶ 9, 14, 583 P.2d at 466, 467. Plaintiffs do not dispute that their neighbor told the deputies that Jose refused to return farm equipment that belonged to him. [Doc. 43, at 5–6]. Jose confirmed the same for the deputies. [Doc. 38-1, Attach. 1, at 8:13–14:08]; [Doc. 38-4, Attach. 1, 8:53–14:51]. Thus, the deputies had reason to suspect Jose had unlawfully dispossessed his neighbor of property. I find, therefore, that the deputies initiated the arrest on a good-faith belief. *Compare Doe*, 1978-NMSC-072, ¶ 14, 583 P.2d at 467, *with Frazier*, 1975-NMCA-074, ¶¶ 11, 12, 537 P.2d at 712, 713. Defendants are entitled to summary judgment on Plaintiffs' assault and battery claims.

---

[5] The Court does not delve into Defendants' argument about whether New Mexico typically giving the question of reasonable force to a jury is substantive or procedural law for *Erie* purposes because summary judgment would be proper under both New Mexico and federal law. Fed. R. Civ. P. 56(a); *Ellis*, 2008-NMSC-032, ¶ 41, 186 P.3d at 255.

## VIII.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON JOSE CHAVEZ'S ADA CLAIMS.

**A.   The ADA's Application to Arrests and Failure-to-Train Liability.**

Under the ADA, a person may not be denied the benefit of public services, programs, and activities or otherwise suffer discrimination by reason of their disability. 42 U.S.C. § 12132. The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities, such as hearing, eating, sleeping, or walking. 42 U.S.C. § 12102(1). The ADA requires public entities to provide disabled individuals with a reasonable accommodation to ensure they receive relatively equal access to and treatment by their services compared to a person without the same disability. *J.V. ex rel. C.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295, 1299 (10th Cir. 2016); *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007).

While the Tenth Circuit has never conclusively ruled that police officers must comply with the ADA when performing *ad hoc* arrests, it rejected that the ADA could never apply. *Clark v. Colbert*, 895 F.3d 1258, 1265 (10th Cir. 2019); *Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999). Other circuits have recognized or assumed that the ADA governs *ad hoc* arrests, albeit with certain nuances. *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1065 (9th Cir. 2024); *see Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024); *see also Gray v. Cummings*, 917 F.3d 1, 16 (1st Cir. 2019) (discussing other circuits).

The Tenth Circuit has also never conclusively ruled the ADA requires municipalities to adequately train and supervise their police officers' compliance with the statute. *Clark*, 895 F.3d at 1265. Typically, "failure to train" refers to a theory of liability under § 1983 where municipalities neglect controlling their employees to ensure they don't commit constitutional violations despite an obvious need. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). In effect, its negligence toward its officers' violations of its citizens' rights becomes the municipality's

actionable "policy" of law-breaking. *Id.* However, the failure-to-train theory requires the municipality's officers to have first committed an underlying offense against the plaintiff. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Where the Tenth Circuit has presumptively applied the ADA to *ad hoc* arrests, an officer must have either known or had fair notice that the suspect needed an accommodation to avoid suffering greater injury or indignity from the arrest than would have someone without the same disability. *Gohier*, 186 F.3d at 1220–21. Fair notice means either the arrestee requested an accommodation from the officer or the officer should have realized the arrestee's obvious need for one. *J.V. ex rel. C.V.*, 813 F.3d at 1299.

**B.     Aleman and Ruiz Did Not Have Fair Notice that Jose Chavez Required a Reasonable Accommodation.**

Assuming, arguendo, that the ADA applied to Jose's *ad hoc* arrest, there still does not exist a genuine factual dispute over whether the deputies had fair notice that Jose Chavez required an accommodation. Defendants point out an absence of evidence or allegations of what qualifying disability Jose experienced, how the deputies were on notice that Jose needed accommodation because of that disability, and what a reasonable accommodation would have been. [Doc. 38, at 21]. Plaintiffs respond that Aleman and Ruiz "undisputably" knew that Jose had age concerns and ambulatory issues. [Doc. 43, at 25–26]. Plaintiffs then argue that an appropriate accommodation would have been for the deputies to wait and seek additional assistance to confirm the legality of arresting Jose before executing the arrest. [Doc. 43, at 25–26].

Age alone does not qualify as a disability under the ADA. 29 C.F.R. § 1630, App. And the only record support that Jose suffered from ambulatory issues comes from the body camera footage, in which Jose appears to walk with a slight but noticeable limp. [Doc. 38-1, Attach. 1, at

7:48–8:13]; [Doc. 38-4, Attach. 1, at 8:27–8:53]. While the deputies may have observed Jose's limp, that alone does not prove fair notice that Jose needed an accommodation under the ADA. *J.H. ex rel. J.P. v. Bernalillo City*, 806 F.3d 1255, 1261 (10th Cir. 2015). In the footage Jose appears to move adequately towards the deputies, walk back towards his house, and maneuver around the driveway during their confrontation while holding the stick in his hands. C*f. Robertson*, 500 F.3d at 1198 (genuine issue over whether defendants knew the plaintiff needed an accommodation for his deafness because of his observable struggles to hear). No evidence suggests that Jose suffered a greater injury or indignity from the arrest as a result of his limp. *Gohier*, 186 F.3d at 1220–21.

Therefore, I find that there does not exist a genuine dispute of material fact for Jose Chavez's ADA claim for failure to accommodate, and Aleman, Ruiz, and Doña Ana County are entitled to summary judgment as a matter of law. Because I find that there was no underlying violation of the ADA, Doña Ana County is also entitled to summary judgment on Jose Chavez's failure-to-train claim. *Graves*, 450 F.3d at 1218; *J.H. ex rel. J.P.*, 806 F.3d at 1262.

## IX.  CONCLUSION

In summary, for the reasons above I **GRANT** Defendants' motion for summary judgment on Plaintiffs' claims for excessive force under the Fourth Amendment and § 1983, assault and battery under the NMTCA, and failure to accommodate and failure to train and/or supervise under the ADA.[6] The Court will enter judgment on these claims in favor of Defendants.

**IT IS SO ORDERED.**

---

[6] These claims are listed as Counts II, III, XVII, XX, XIII in Plaintiffs' second amended complaint. [Doc. 48, at 7–8, 15, 17–18].

_____
Hon. Jerry H. Ritter
United States Magistrate Judge